UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  HENRY VALENCIA, INC., a                                   No. 20-10539-j11
        New Mexico corporation,

        Debtor.

**MEMORANDUM OPINION REGARDING ADMINISTRATIVE EXPENSE
CLAIMS OF THE INTERNAL REVENUE SERVICE AND
STATE OF NEW MEXICO TAXATION AND REVENUE DEPARTMENT**

At issue before the Court is whether federal and state taxing authorities are entitled to allowed administrative expenses despite their having filed their administrative expense claims after the general administrative expense claims bar date. Also at issue is whether, if the administrative expense claims are not time barred, are the taxing authorities entitled to allowed administrate expenses for taxes incurred after the property of the estate vested in the Debtor under a confirmed chapter 11 plan of liquidation.

At a hearing held March 9, 2023, the Court made an oral tentative ruling subordinating any late filed administrative expense claims of the State of New Mexico Taxation and Revenue Department ("NMTR") and the Internal Revenue Service ("IRS") to all timely claims of any priority (the "Tentative Ruling"). The Court gave all interested parties an opportunity to object to the Tentative Ruling. NMTR and IRS objected.[1] Creditor Joseph Fuentes filed a response in support of the Tentative Ruling, in which Debtor joined.[2] Having considered the parties' briefs, and being otherwise sufficiently informed, the Court revises its Tentative Ruling as follows.

---

[1] *See* Doc. 275 and Doc. 276.
[2] *See* Doc. 277 and Doc. 278.

SUMMARY OF THE COURT'S RULING

Bankruptcy courts are bound to follow the mandates of the Bankruptcy Code even if doing so produces an unfair result. For reasons the Court will explain, this is one of those cases. NMTR and the IRS may claim administrative expenses for unpaid taxes incurred by the bankruptcy estate despite their having filed their claims for administrative expenses after the general administrative expense claims bar date. However, neither NMTR nor the IRS is entitled to an allowed administrative expense for unpaid taxes incurred after property of the estate vested in the Debtor under its confirmed chapter 11 plan of liquidation.

Pursuant to 11 U.S.C. § 503(b)(1)(D),[3] NMTR and IRS were not required to file a request for payment of an administrative expense for taxes incurred by the bankruptcy estate as a condition to the allowance of an administrative expense. However, because § 503(b)(1)(B) provides that an administrative expense for "any tax" must be "incurred by the estate," and, since the estate ceased to exist upon the effective date of Debtor's confirmed plan on April 1, 2021, when all estate assets vested in the reorganized Debtor, any claim by NMTR and IRS for taxes incurred on or after April 1, 2021 are not compensable as administrative expenses of the estate.

BACKGROUND FACTS AND PROCEDURAL HISTORY[4]

Debtor owned and operated a General Motors automobile dealership in Espanola, New Mexico. Debtor's namesake, Henry Valencia, became ill to the point where he could no longer effectively operate the business. His daughter, Margaret Valencia, stepped in and took over management of Debtor's operations. Debtor commenced a voluntary chapter 11 case on March 10, 2020, after its major lender threatened foreclosure. Debtor's ultimate strategy in the

---

[3] All future statutory references in this Memorandum Opinion are to title 11 of the United States Code, unless otherwise specified.
[4] The background facts recited in this Memorandum Opinion are not in dispute.

bankruptcy case was to sell its real estate and certain other assets to an authorized General Motors dealer to maximize value for creditors. On April 1, 2021, the Court entered an order confirming Debtor's plan of liquidation, as modified.[5] The plan as originally confirmed contemplated the sale of all remaining business assets and real property of the Debtor within six months of the April 1, 2021 plan effective date (the "Effective Date"),[6] and it anticipated the sales proceeds would be sufficient to pay all allowed claims in full.[7]

The confirmed plan as modified both before and after confirmation (the "Plan") provided for payment of all administrative expenses in full on or before the Effective Date.[8] The Plan also provided for the vesting of all estate property in the reorganized Debtor[9] on the Effective Date:

> On the Effective Date, Confirmation of this Plan shall have, *inter alia*, the following effects:
>
>> All property of the bankruptcy estate, including rights, claims, or causes of action, shall vest in the Reorganized Debtor, subject only to the liens and claims provided for in this Plan.[10]

Joseph Fuentes is one of Debtor's principal non-priority unsecured creditors, holding a claim in the amount of $42,290.[11] Mr. Fuentes expected that his claim would be paid in full from Debtor's sale of its assets.

Debtor's Monthly Operating Reports ("MORs") for the monthly periods ending March 2020, June 2020, September 2020, and December 2020, affirmatively state that Debtor timely

---

[5] *See* Docs. 119 and 131.
[6] Plan, ¶ 7.7.1 (Doc. 119).
[7] Plan, ¶¶ 6.1 through 6.5 (treatment of claims) (Doc. 119).
[8] Plan, ¶ 6.1 (Doc. 119).
[9] The debtor, post-confirmation, is sometimes referred to as the "reorganized Debtor" and sometimes as "Debtor." The debtor, pre-confirmation, is referred to as "Debtor."
[10] Plan, ¶ 11.2.2 (Doc. 119).
[11] *See* Claim 4-1.

filed tax returns and paid all taxes.[12] The March 2021 MOR, filed December 7, 2021, reports that Debtor had not timely filed tax returns or paid all taxes.[13] The total reported post-petition payables, including taxes incurred post-petition but remaining unpaid, was $16,954.64.[14] Absent an administrative expense claim of the IRS and NMTR in excess of the amounts reported in Debtor's MORs, all or a substantial portion of Mr. Fuentes's claim would be paid from distributions under the Plan.

Debtor ceased all business operations as of December 31, 2021.[15] The only then known administrative expense claim in dispute was the claim asserted by Jeff Carmichael and Sherry Evans-Carmichael filed December 2, 2021.[16] Doc. 163. At Mr. Fuentes's urging, so that any issues relating to allowance of administrative expense claims would not delay distributions to creditors, (i) by an order entered February 18, 2022 ("Administrative Expense Claims Bar Date Order"),[17] the Court fixed March 22, 2022 as the deadline to file an application or motion for allowance of administrative expenses (the "Administrative Expense Claims Bar Date"), and (ii) by an order entered December 9, 2022, the Court fixed a deadline for Debtor to make complete distributions to creditors under the confirmed Plan.[18]

The Administrative Expense Claims Bar Date Order recites that the Plan "contemplates a sale of the Debtor's assets that will generate proceeds sufficient to pay all claim in full[,]" and that setting the bar date is "necessary so that the total amount of allowed Administrative

---

[12] See Doc. 46 (March 2020 MOR); Doc. 63 (June 2020 MOR); Doc. 71 (September 2020 MOR); Doc. 97 (December 2021 MOR).
[13] *See* Doc. 165.
[14] *Id.* at p. 2.
[15] *See* Affidavit of Margaret Valencia (Doc. 261).
[16] *See* Doc. 163.
[17] Doc. 178.
[18] *See* Doc. 240.

Expenses can be determined prior to the sale of Debtor's assets."[19] The Administrative Expense Claims Bar Date Order provides

> [a]ny claim for allowance of an Administrative Expense will be barred (disallowed) without further order of the Court if an application or motion for allowance of the Administrative Expense is not timely filed or the Notice of the application or motion is not timely filed or served.[20]

IRS and NMTR received notice of the Administrative Expense Claims Bar Date Order.[21] Neither NMTR nor IRS filed an administrative expense claim or sought an extension of the Administrative Expense Claims Bar Date even though they could have known by reviewing the MORs and the status of Debtor's tax return filings and tax payments that Debtor's MORs incorrectly stated that tax returns had been filed and taxes were paid while Debtor was operating post-petition.

Debtor was unable to close the sale of all remaining business assets and real property within the six-month period following the Effective Date as originally contemplated under the Plan. After several extensions of time and various difficulties, the sale of all of Debtor's remaining assets closed on June 10, 2022.[22] The buyer was an authorized General Motors dealer. The net proceeds from the sale totaled $278,140.97.[23]

Following a final, evidentiary hearing on the Carmichaels' timely filed motion for allowance of post-petition administrative expenses, on January 12, 2023 the Court entered an order allowing the Carmichaels an administrative expense in the amount of $1,133.13.[24] Under

---

[19] Doc. 178.
[20] *Id.*
[21] *See* Certificate of Notice – Doc. 107. The certificate of notice indicates that electronic notice was sent to NMTR and to IRS to each taxing authority's counsel of record. *Id.* Email notice of the Administrative Claims Bar Date Order was also sent to NMTR and to IRS. *Id.*
[22] *See* Report of Sale – Doc. 212.
[23] *Id.*
[24] *See* Doc. 248.

the Court's December 9, 2022 order, the deadline for Debtor to make a complete distribution to creditors was 21 days after the Court ruled on the Carmichaels administrative claim, or Thursday, February 2, 2023. Three days before date of the required distribution and long after the expiration of the Administrative Expense Claims Bar Date, NMTR filed Claim No. 9-1 asserting for the first time a claim for administrative expenses. Claim No. 9-1 is in the total amount of $141,629.66, and states that the claim arises from estimated post-petition taxes for tax periods ending June 30, 2021 through December 31, 2022.[25]

The day before the date of the required distribution, Debtor requested a status conference because "[i]t has come to Debtor's counsel's attention that there are missing post-petition tax returns for both the IRS and NMTRD that need to be addressed to liquidate the claims of those tax entities."[26] The Court thereafter held several status conferences,[27] ultimately issuing its Tentative Ruling.

NMTR filed its amended Claim No. 9-2 on February 28, 2023, reducing its estimated administrative expense claim to $37,159.00 for post-petition taxes for tax periods ending March 31, 2020 through December 31, 2021.[28] NMTR's estimated administrative expense claim for tax periods ending before April 1, 2021, which is the Effective Date of the confirmed Plan, are as follows:

| Tax period | Kind of Tax | Amount Claimed |
|---|---|---|
| 31-Mar-2021 | WKC | $103.98 |
| 31-Dec-2020 | PTW-R | $5.00 |
| 31-Dec-2020 | WKC | $110.08 |

---

[25] *See* Claim No. 9-1.
[26] Doc. 253.
[27] *See* Doc. 257 (Order resulting from status conference held February 1, 2023); Doc. 263 (Order Resulting from status Conference held February 8, 2023); Doc. 267 (Order Resulting from Status Conference held March 1, 2023); and Doc. 270 (Order Resulting from Status Conference held March 9, 2023).
[28] *See* Claim No. 9-2.

| | | |
|---|---|---|
| 30-Sep-2020 | WKC | $127.32 |
| 30-Jun-2020 | WKC | $128.09 |
| 31-Mar-2020 | WKC | $37.20 |
| | **TOTAL:** | **$511.67** |

On March 9, 2023, the IRS for the first time filed its claim for administrative expenses in the total amount of $161,343.10.[29] The administrative expenses for tax periods ending before the Effective Date of the confirmed plan are as follows:

| Tax Period | Kind of Tax | Amount Claimed |
|---|---|---|
| 06/30/2020 | WT-FICA | $30,847.23 |
| 09/30/2020 | WT-FICA | $27,070.02 |
| 12/31/2020 | WT-FICA | $25,373.15 |
| 03/31/2021 | WT-FICA | $1,542.77 |
| | **TOTAL:** | **$84,833.17**[30] |

Debtor's confirmed Plan provides for treatment of administrative expenses as follows:

> Allowed **Class 1** claims (administrative expenses) shall be paid in full on or before the Effective Date, or upon approval thereof by the Court (if such approval is required), if such approval occurs after the Effective Date, unless the holder of any such claim agrees (whether expressly or otherwise) to deferred payment thereof, in which case the allowed amount of such administrative expense shall bear interest at the rate of 1% per month during any such deferred payment period. Any Class 1 claim that is an ordinary course of business expense, as opposed to one for professional fees or administrative expenses incurred herein, shall be paid, and interest shall accrue thereon, according to the provisions of the agreement giving rise to the claim.

---

[29] *See* Claim No. 10-1. On June 17, 2022, the IRS filed a pre-petition priority unsecured claim in the amount of $194,626.80, which it later amended on January 21, 2021, to claim $194,526.80, and again on January 26, 2021, to claim $196,027.22. *See* Claims 5-1, 5-2, and 5-3.

[30] The FICA withholding taxes are "trust fund" monies that never belonged to the Debtor, and should have been paid to the IRS as part of the Debtor's regular payroll process and business operations. *See Begier v. I.R.S.*, 496 U.S. 53, 55 (1990) (holding that FICA taxes withheld from employee wages are not property of the debtor and explaining that such taxes are often called "trust fund taxes" "[b]ecuase the amount of these taxes is 'held to be a special fund in trust for the United States.'" (quoting 26 U.S.C. § 7501).

-7-

DISCUSSION

Allowance of administrative expenses is governed by § 503, which provides, in relevant part:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
> (b) After notice and a hearing, there shall be allowed administrative expenses . . . , including—
>    . . .
>       (B) any tax—
>          (i) incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title[.]

§ 503(a) and (b)(1)(B).

Notwithstanding § 503(a)'s general requirement to file a request for payment of an administrative expense as a condition to allowance, § 503(b)(1)(D), added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, excepts governmental units from that requirement. It provides:

> notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense.

§ 503(b)(1)(D).

Taxing authorities such as NMTR and IRS are governmental units.[31] Under § 503(b)(1)(D), NMTR and IRS were not required to file a request for payment of administrative expense as a condition to being allowed an administrative expense. To qualify for an allowed administrative expense, NMTR and IRS need only demonstrate that the tax at issue (a) was

---

[31] *See Lastra v. United States (In re Lastra)*, Adv. No. 12-1188T, 2012 WL 6681739, at *2 (Bankr. D.N.M. Dec. 21, 2012) (recognizing that § 507(a)(8) refers to claims of governmental units, including taxing authorities).

incurred by the bankruptcy estate; and (b) is not of a kind described in § 507(a)(8).[32] Taxes Debtor owes to NMTR and IRS incurred by the bankruptcy estate satisfy these criteria. However, not all of the post-petition taxes NMTR and IRS claim were incurred by the bankruptcy estate.

The commencement of Debtor's bankruptcy case created the bankruptcy estate. § 541 ("The commencement of a case under section 301 . . . of this title creates an estate."). The bankruptcy estate continued until April 1, 2021, when all assets vested in the Debtor on the Effective Date. *See* Plan, ¶ 11.2.2 - Doc. 119; § 1141(b) ("[T]he confirmation of a plan vests all of the property of the estate in the debtor."). Thus, on April 1, 2021, Debtor's bankruptcy estate ceased to exist.[33]

Here, none of the relevant tax periods straddle the Plan Effective Date. Post-petition taxes incurred in connection with the operation of Debtor's business following the commencement of the bankruptcy case for tax periods that ended before the Effective Date were incurred by the bankruptcy estate and qualify as administrative expenses under § 503(b).[34] Taxes incurred for tax

---

[32] *See In re L.J. O'Neill Shoe Co.*, 64 F.3d 1146, 1149 (8th Cir. 1995) (explaining that a "tax claim must satisfy a 'two-prong test' to qualify as an administrative expense claim. First, the tax must be 'incurred by the estate.' Second, the tax must not be 'specified in section 507(a)(7) [now 507(a)(8)].") (citations omitted); *In re N. New England Tel. Operations LLC*, 504 B.R. 372, 379 (Bankr. S.D.N.Y. 2014) ("[F]or a tax claim to be given administrative priority under § 503(b)(1)(B) and thereby fall under § 503(b)(1)(D)'s exception . . . , the Court must find that the tax was incurred by the estate."), *aff'd sub nom. In re N. New England Tel. Operations, LLC*, No. 09-16365-CGM, 2014 WL 3952925 (S.D.N.Y. Aug. 12, 2014), *aff'd sub nom. In re N. New England Tel. Operations LLC*, 795 F.3d 343 (2d Cir. 2015).
[33] *See In re Maine Pride Salmon, Inc.*, 180 B.R. 337, 341 (Bankr. D. Me. 1995) ("The confirmation of a plan . . . terminates the estate and revests estate property in the debtor under Code § 1141(b).").
[34] *See O'Neill Shoe*, 64 F.3d at 1151 (holding that post-petition portion of corporate entity's tax claim was entitled to administrative expense priority); 4 Collier on Bankruptcy, ¶ 503.07[2][a][i] (Richard Levin & Henry Sommer eds. 16th ed.) ("In a non-individual case, all of the assets and income become part of the bankruptcy estate and all taxes incurred during the administration of the case, except those treated as unsecured priority claims under section 507(a)(7), are treated as administrative expenses."); *In re EMC Indus., Inc.*, 27 B.R. 696 (Bankr. D.S.C. 1983) (holding that state withholding and sales taxes incurred by the debtor in possession after commencement of the chapter 11 case in the operation of debtor's business constituted administrative expenses under § 503(b)(1)(B)). Such post-petition taxes are not "of a kind described in § 507(a)(8)" because taxes entitled to priority under § 507(a)(8) constitute pre-petition claims. *See In re Anchor Glass Container Corp.*, 375 B.R. 683, 686 (Bankr. M.D. Fla. 2007) ("[O]nly liabilities incurred by the estate post-petition, as distinguished from taxes for which the debtor already had

periods that began and ended on or after the Effective Date were not incurred by the estate. Thus, unless time barred, unpaid taxes incurred by the estate post-petition, pre-Effective Date, qualify as administrative expense claims. On the other hand, unpaid post-petition taxes for tax periods that ended *after* the Effective Date were not incurred by the bankruptcy estate because the Debtor's estate no longer existed once the assets revested. Consequently, all post-petition taxes for tax periods ending on or after April 1, 2021, do not qualify as administrative expenses.[35]

*Neither the Administrative Claims Bar Date Order
nor the Confirmed Plan Overrode 503(b)(1)(D)*

It seems unfair that a taxing authority charged with knowledge that a liquidating corporate debtor in possession has been operating and not paying taxes, contrary to what is stated in the debtor's MORs, can ignore an administrative expense claims bar date and raise its administrative expense claim for the first time right before the debtor is set to make a complete distribution of its assets to creditors, and thereby deprive nonpriority unsecured creditors who relied on the administrative expense claims bar date of any payment. Mr. Fuentes and Debtor contend that this should not be the result here. Although the Court agrees it seems unfair, the Court nevertheless is bound to apply the Bankruptcy Code as written.

---

a pre-petition liability, may be allowed as administrative expenses . . . . [because] a claim cannot be both a pre-petition claim against the debtor and a post-petition administrative claim against the bankruptcy estate."); 4 Collier on Bankruptcy ¶ 503.07[2] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[T]he reference in section 503(a)(1)(B)(i) to section 507(a)(8) means that if a tax qualifies for eighth priority treatment under section 507(a)(8), it is disqualified from administrative expense priority under section 503(b)(1)(B).").

[35] *See In re Worldcom, Inc.*, 401 B.R. 637, 652 (Bankr. S.D.N.Y. 2009) ("After confirmation of a plan under Chapter 11, administration of the estate ends and the estate ceases to exist . . . . Thus, it is impossible to classify [claims] that accrue post-confirmation as administrative expenses for the simple reason that after confirmation there is no longer an estate to administer." (quoting *In re Frank Meador Buick, Inc.*, 65 B.R. 200, 203 (W.D. Va. 1986))); *Bezner v. United Jersey Bank (In re Midway, Inc.)*, 166 B.R. 585, 593-94 (Bankr. D.N.J. 1994) ("Once the estate is terminated upon confirmation, creditors cannot ordinarily obtain administrative status for their claims because there is no estate to preserve."); *see also In re Ruiz*, No. BR 12-63323-TMR13, 2014 WL 1576825, at *2 (Bankr. D. Or. Apr. 17, 2014) (in the context of a chapter 13 case, "with no estate in existence post-confirmation, charges then arising cannot have administrative expense status under § 503(b)(1)(A).").

Mr. Fuentes and Debtor contend that the Administrative Expense Claims Bar Date Order and the terms of the Plan bar NMTR and IRS from asserting an untimely claim for administrative expenses, despite § 503(b)(1)(D)'s exception to § 503(a)'s general requirement that a creditor must file a request for payment of an administrative expense as a condition to its allowance. The stated purpose of the Administrative Expense Claims Bar Date Order was "so that the total amount of the allowed Administrative Expenses can be determined prior to the sale of Debtor's Assets."[36] Both the IRS and NMTR received notice of the Administrative Expense Claims Bar Date Order and neither timely filed a claim for administrative expenses by the bar date nor did either request an extension of the time to file such a claim.

If the Administrative Expense Claims Bar Date Order bars NMTR's and the IRS's administrative claims, the order was entered in contravention of § 503(b)(1)(D)'s mandate that governmental units are not required to file a request for payment of an administrative expense. Courts are split on whether an administrative expense claims bar date order entered in contravention of § 503(b)(1)(D) binds governmental units where the order does not expressly state that it applies to governmental units. In *In re BH S & B Holdings LLC*, 435 B.R. 153, 164-65 (Bankr. S.D.N.Y. 2010), the bankruptcy court found that "the 503(b)(1)(D) exception does not apply where the court has entered an administrative bar date order applicable to governmental units." Because the administrative bar date order at issue applied generally to "all parties" (with exceptions that did not include taxing authorities), the *BH S & B Holdings* court concluded that the taxing authorities were required to comply with the bar date regardless of § 503(b)(1)(D)'s exception. *Id. See also In re N. New England Tel.*, 504 B.R. at 380 (relying on *BH S & B Holdings*, to conclude that a general administrative bar date applicable to all parties

---

[36] Doc. 178.

-11-

with no exception for governmental units required governmental units to file a claim regardless of § 503(b)(1)(D)).

On the other hand, in *Las Uvas Valley Dairies,* No. CIV 20-1014 JB/KK, 2021 WL 4472933, at *17 (D.N.M. Sept. 30, 2021), the district court concluded that broad and general language in an administrative claims bar date order, "which never expressly states that it applies to governmental entities' post-petition tax claims—seems inadequate to give sufficient notice to [the taxing authority/governmental unit] that it overrides the unqualified mandate of Section 503(b)(1)(D)."

This Court agrees that generalized language in an administrative expense claim bar date order that does not explicitly state that it applies to governmental units and does not expressly require governmental units to file an administrative expense claim notwithstanding § 503(b)(1)(D) is insufficient to bar a governmental unit from qualifying for an allowed administrative expense. A court should be presumed to follow the law and parties should be able to presume that the court has done so. Here, the general language of the Administrative Expense Claims Bar Date Order does not expressly bar governmental units from qualifying for an allowed administrative expense absent timely filing of a claim notwithstanding the order's intended purpose of identifying the total amount of administrative expenses. As a result, the Administrative Expense Claims Bar Date Order did not override § 503(b)(1)(D)'s exclusion.

Mr. Fuentes asserts that NMTR and the IRS should have objected to confirmation of the Plan if they wanted to complain that the Plan violated § 503(b)(1)(D), and that, since the Plan limited Class 1 claimants to "[a]dministrative expenses of this proceeding as determined, allowed, or allocated by the Court," the IRS and NMTR should have either obtained Court approval of their asserted administrative expenses before the Administrative Expense Claims Bar

-12-

Case 20-10539-j11    Doc 279    Filed 06/08/23    Entered 06/08/23 15:47:42 Page 12 of 14

Date or objected to confirmation of the Plan. But the confirmed Plan did not even fix an administrative expense claims bar date or set a deadline for the Court to determine such claims. The Plan only generally provided that administrative expenses will be paid on the Effective Date. Again, to impose an administrative expense claims bar date on governmental units that runs contrary to § 503(b)(1)(D), the plan must expressly so provide so that if taxing authorities then chose not to object to the plan, they might be deemed to have intentionally relinquished a known right. *But see Collins v. Tennessee Dep't of Revenue*, 555 B.R. 670, 675 (W.D. Tenn. 2016) (concluding that debtor's confirmed plan, which fixed a deadline to file an application for administrative expense, could not "override" the plain language of § 503(b)(1)(D), such that the taxing authority was not required to file an application for allowance of its administrative expenses).

## CONCLUSION

Based on the foregoing, the Court modifies its Tentative Ruling to provide that the post-petition claims of IRS and NMTR qualify as administrative expenses for taxes incurred by the estate pre-Effective Date, which may be paid from the proceeds of the sale of Debtor's assets, subject to notice and a hearing. Post-petition taxes for tax periods ending on or after the Effective Date do not qualify as administrative expenses because such taxes were not incurred by the estate. The Court acknowledges that under its ruling NMTR and IRS benefit only because of the delay in the closing of the sale of the Debtor's assets and the subsequent further delay in distribution of the sales proceeds in accordance with the confirmed Plan. But the Court did not make the law.

The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: June 8, 2023

COPY TO:

Christopher M Gatton
Giddens & Gatton Law, P.C.
Counsel for Debtor
10400 Academy NE, Suite 350
Albuquerque, NM 87111

Manuel Lucero
Assistant US Attorney
Counsel for the Internal Revenue Service
PO Box 607
Albuquerque, NM 87103-0607

Angela Swenson
New Mexico Attorney General Office
Counsel for Taxation and Revenue Department of the State of New Mexico
201 Third St NW, Suite 300
Albuquerque, NM 87102

Daniel A. White
Askew & White, LLC
Counsel for Joseph Fuentes
1122 Central Ave SW, Ste. 1
Albuquerque, NM 87102